## Chesapeake & O. Ry. Co. et al. v. Pittman.

Feb. 27, 1940.

As Extended on Rehearing April 23, 1940.

Todd & Beard, Hunt, Bush & Lisle and H. T. Lively for appellants.

Kinsolving & Reasor, Gilbert & Davis and Dummitt & Deweese for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Reversing.

Buford Pittman was killed in a collision between a truck which he was driving and an engine on one of the Chesapeake & Ohio Railway Company's freight trains at a railroad crossing on the Smithfield road just northwest of Shelbyville. The Louisville & Nashville Railroad Company was made a party defendant because it owns the tracks at the place where the collision oc-

curred. The traffic on U. S. Highway 60 was being detoured from Shelbyville to Louisville via the Smithfield road at the time of the collision in August, 1938. Pittman's truck collided with the engine shortly before noon, August 6th. He was killed instantly. The trial resulted in a verdict and judgment thereon in the sum of $9,000 in favor of the appellee, Mrs. Lucille Pittman, administratrix of the estate of her deceased husband; hence this appeal.

The crossing in question is a dangerous one. A person approaching it from the south, the direction from which Pittman was coming, does not reach a point where a view of the track to the west, the direction from which the train was coming, can be had until he was within 30 to 50 feet of the crossing. The usual warning signs, including painted markings on the highway near the tracks, had been installed so as to warn travelers. In addition, the railroad companies had erected an electric warning sign at the southeast corner of the crossing. This signal consisted of a wigwag, a red light thereon, and a bell, all operated by the same electric wires, and was designed to work automatically when trains came within certain distances of the crossing. The alleged negligence of the companies involves questions as to whether the statutory signals were given by the engineer as the train approached the crossing from the west, and also as to whether the electric signal was working properly. Numerous witnesses testified for both parties on these points, but we deem it unnecessary to enter upon an exhaustive discussion of the evidence for reasons hereinafter discussed.

Among the grounds urged for reversal are: (1) the trial court erred in rejecting evidence that Frances Smitha, a material witness for the appellee, was under indictment in the Shelby circuit court; and (2) error was committed in the giving of Instruction No. 1. Being of the opinion that these two contentions are well grounded, we deem it unnecessary to discuss other questions raised by the appellants.

Frances Smitha was approximately 18 years of age at the time she testified in the case. Previous to that time she had been indicted, along with her stepfather (Jodie Hughes) and her stepsister, for arson. The case had been continued once on motion of Hughes, but it was

continued on motion of the Commonwealth prior to the term at which this case was tried. Hon. H. B. Kinsolving, Jr., Commonwealth's Attorney, is one of Mrs. Pittman's attorneys. He examined Frances Smitha at the trial. The trial court refused to permit the appellants to introduce testimony as to the indictment. This, as we have indicated, was error.

Before discussing the reasons for the conclusion indicated, we will review briefly the Smitha girl's testimony. She testified in substance that: she was sitting on the porch of the Hughes home, which was some 500 feet south of the crossing and on the west side of the road, as Pittman's truck approached the crossing; he was traveling at a moderate rate of speed (30 miles per hour), and was looking straight ahead, and on cross-examination she said that he did not slacken his speed before reaching the crossing; after Pittman passed she heard the train blow one time east of Doyle's house, a point some 300 feet west of the crossing; she could not see the crossing from the road nor the train as it approached; after she heard the train coming from the west, she said, "I jumped up off the porch after I saw the truck pass and ran out to see what was going to happen; I knew something, I heard the train coming, it didn't blow but one time, and I ran out there and saw the collision." It was some 30 feet from the place where Frances Smitha was sitting to the point in the road from which she saw the collision. She said she did not go down to the scene of the collision for about five minutes after it occurred. In answer to the question on direct examination as to whether she observed the signal apparatus, she said: "Well, it wasn't ringing, I looked at it to see." She said also that the wigwag and the flasher light were not operating, and that the only signal she heard given by the approaching train was the one whistle heretofore mentioned. She also testified that the signal bell was not ringing when the engine backed up from the station at Shelbyville to put out the burning truck, and that the wigwag was not working at that time.

Aside from the testimony as to signals just reviewed, the preponderance of the evidence is to the effect that the train whistled near Doyle's (the companies offered testimony to the effect that the statutory signals

were given), and the electric signal bell was ringing as the train approached the crossing and at the time the engine backed up from the station. Some of the witnesses testified that the wigwag was working, others testified that it was not, while still others said they did not notice it or were not in a position to see whether it was working.

Section 597 of the Civil Code of Practice provides as follows:

"A witness may be impeached by the party against whom he is produced, by contradictory evidence, by showing that he has made statements different from his present testimony, or by evidence that his general reputation for untruthfulness or immorality renders him unworthy of belief; but not by evidence of particular wrongful acts, except that it may be shown by the examination of a witness, or record of a judgment, that he has been convicted of felony."

It has been held in a number of cases that it is improper to impeach a witness by showing that he is under indictment. Counsel for the appellee vigorously contend that those cases support the ruling of the trial court in refusing to permit evidence as to Frances Smitha's indictment; but the question at hand is not simply one of impeaching a witness or attacking her credibility. Our rulings allow a wide range in the cross-examination of a witness to show bias and a state of mind likely to affect the witness' testimony. Hedger v. Davis, 236 Ky. 432, 33 S. W. (2d) 310; Johnson v. Commonwealth, 259 Ky. 397, 82 S. W. (2d) 454, and cases cited therein. It was bias and a state of mind on the part of Frances Smitha that the appellants sought to show by the evidence as to her indictment.

No question is raised by counsel for the appellants as to the motives or the actions of the Honorable H. B. Kinsolving, Jr., Commonwealth's Attorney, and this court has no hesitancy in saying that it concurs in that view. But that is not the question. A situation existed in which a witness, here a girl some 18 years of age, might reasonably be expected to offer colored testimony in view of the circumstances involved. It was competent to show with the proper admonition to the jury limiting the effect of the evidence that she was under indictment, not as evidence of any particular wrongful

act, for she was presumed to be innocent until proven guilty, and not merely for the purpose of attacking her credibility, but as a circumstance tending to show that her testimony may have been influenced by a desire to seek the favor or leniency of the prosecuting officer. See the case of People v. Pantages, 212 Cal. 237, 297 P. 890, wherein it was held that such evidence was admissible under Section 2051 of the California Code of Civil Procedure, which provision is substantially the same as Section 597 of our Civil Code of Practice.

In the case of Davidson v. Commonwealth, 261 Ky. 158, 87 S. W. (2d) 119, 122, one of Davidson's witnesses was asked on cross-examination if he were jointly indicted with Davidson, and he answered that he was. In holding that the evidence was admissible it was pointed out that, while it is provided in Section 597 of the Civil Code of Practice that a witness may be impeached by showing that he has been convicted of a felony, the rule is otherwise where the witness is a codefendant indicted for the same crime for which the accused is on trial. The reasons given are:

"First because it is a fact the jury already knows, since the indictment was read to the jury at the opening of the trial, and for the further reason that it is always permissible to show the bias or interest of a witness. These questions were entirely permissible for that purpose. See Campbell v. State, 169 Ark. 286, 273 S. W. 1035; 70 C. J. p. 838, Section 1045."

We have noted that complaint is directed to the giving of Instruction No. 1, the first paragraph of which is as follows:

"It was the duty of the defendants and their agents and servants in charge of its train as it approached the Smithfield Highway Crossing, at the time and place described in the evidence, to ring the engine bell or sound the whistle on the engine at a distance of at least fifty rods from the crossing and to ring the bell or sound the whistle continuously, or alternately, until the engine reached the crossing; and it was a further duty of the defendants, Louisville and Nashville Railroad Company, and Chesapeake and Ohio Railway Company, to exercise ordinary care to have the electric crossing bell and electric

wigwag and flasher light, which had been previously installed by them at said crossing, in reasonably effective working condition *so as to give timely warning to plaintiff's decedent in using said highway and in approaching said crossing of the approach of their train to said crossing at said time and place.*"

It is insisted that the latter part of this paragraph, which we have italicized, made the appellants the insurers that Pittman would be notified. The cases of Louisville & Nashville R. Co. v. Johnson, 214 Ky. 189, 282 S. W. 1087. and Louisville & Nashville R. Co. v. Jameson's Adm'x, 214 Ky. 552, 283 S. W. 1026, support this contention. We think the objection to the instruction would be eliminated if the italicized wording were replaced by the following: "so as to give reasonable warning of the approach of the train to the crossing." On the next trial Instruction No. 1 should be so modified.

All questions not discussed herein are expressly reserved.

Wherefore, the judgment is reversed, with directions for proceedings consistent with this opinion.

Whole Court sitting.